IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT MCNINCH                    :          CIVIL ACTION
                                  :
            vs.                   :
                                  :
MICHAEL J. ASTRUE, et al.         :          NO.  07-4921

## REPORT AND RECOMMENDATION

M. FAITH ANGELL                                      March 10, 2009
UNITED STATES MAGISTRATE JUDGE

        This is an action brought pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final

decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for

supplemental security income ("SSI") under Title XVI of the Social Security Act.  Presently

before this Court are the parties' pleadings including Plaintiff's Brief and Statement of Issues in

Support of Request for Review, Defendant's Response and Plaintiff's Reply thereto.[1]

        On October 28, 2008, counsel presented oral argument.

## Legal Standards

        In his Complaint, the Claimant is challenging the decision of the Commissioner denying

his claims for disability benefits.

        The role of this court on judicial review is to determine whether there is substantial

evidence to support the Commissioner's decision. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir.

2001); Knepp v. Apfel, 204 F.3d 78, 84 (3d Cir. 2000).  Substantial evidence is defined as the

relevant evidence which a reasonable mind might accept as adequate to support a conclusion.

---

        [1] The Record, complaint and answer have also been filed in this matter.

Pierce v. Underwood, 487 U.S. 552, 565 (1988); Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000).  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence. See Morales v. Apfel, 225 F.3d at 316 (3d Cir. 2000).

It is not the role of the Court to review the Commissioner's decision de novo or re-weigh the evidence of Record. See e.g., Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

To establish a disability under the Social Security Act a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any `substantial gainful activity' for a statutory twelve-month period." Fargnoli v. Massanari, 247 F.3d at 38-39 (3d Cir. 2001) (quoting, Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)); 42 U.S.C. § 423(d)(1)(1982).  A claimant can establish such a disability in either of two ways: (1) by producing medical evidence that one is disabled per se as a result of meeting or equaling certain listed impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2000), or (2) by demonstrating an impairment of such severity as to be unable to engage in any kind of substantial gainful work which exists in the national economy.  Heckler v. Campbell, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

In the Decision to evaluate Mr. McNinch's disability the sequential evaluation process was used.

The Commissioner's regulations provide a five (5) step sequential evaluation process for determining whether or not a claimant is under a disability.  20 C.F.R. § 404.1520.  Step 1 states that an individual who is working will not be found to be disabled regardless of medical findings. 20 C.F.R. § 404.1520(b).  Step 2 involves evaluating severe impairments.  20 C.F.R. § 404.1520©.  Step 3 requires determining whether the claimant has an impairment or combination

of impairments which meets or equals a listed impairment in Appendix 1.  20 C.F.R. §

404.1520(d).  Step 4 states that if an individual is capable of performing past relevant work, he

will not be found to be disabled.  20 C.F.R. § 404.1520(e).  Step 5 requires that if an individual

cannot perform past relevant work, other factors must be considered to determine if other work in

the national economy can be performed.  20 C.F.R. § 404.1520(f).

It is the ALJ's responsibility to resolve conflicts in the evidence and to determine

credibility and the relative weights to be given to the evidence. Plummer v. Apfel, 186 F.3d at

429 (3d Cir. 1999); Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993).  The ALJ's

conclusions must be accepted unless they are without basis in the record.  Torres v. Harris, 494 F.

Supp. 297, 301 (E.D. Pa. 1980), aff'd, 659 F.2d 1071 (3d Cir. 1981).

Upon appeal to this Court, the Secretary's factual determinations, if supported by

substantial evidence, shall be conclusive. The conclusiveness applies both to findings of fact and

to inferences reasonably drawn from that evidence.  See Fargnoli v. Massanari, 247 F.3d at 38

(3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are

bound by those findings, even if we would have decided the factual inquiry differently.").


**Analysis**

Plaintiff, Robert McNinch, filed an initial application for SSI on December 21, 2005.

This claim was denied. An evidentiary hearing was held on January 5, 2007, before an

Administrative Law Judge ("ALJ").  Present were the Claimant, his representative and a

Vocational Expert ("VE").  The Claimant testified as did the VE.  On April 25, 2007, the ALJ

issued an Opinion denying Plaintiff's eligibility for disability benefits.  The Claimant sought

review from the Appeals Council, which on September 21, 2007 denied the request, thus affirming the ALJ's decision as the final decision of the Commissioner.  Plaintiff then filed a Complaint in this Court and the Commissioner answered. Both filed briefs and argued before me on October 28, 2008.

Born on August 22, 1962, Plaintiff was 43 years old at the time of his initial application. He has a limited education and has not engaged in "substantial gainful activity" or "past relevant work"[2] as defined under the Social Security Act since the alleged onset date, January 1, 1998.

Medical records beginning in 2003 confirm, as identified by the ALJ at Step 2, severe impairments; namely, substance abuse disorder, depression, a history of asthma and residuals from a 1985 right elbow fracture repaired with "pins".  These impairments "meet Sections 12.09 through 12.04 of CFR Part 404, Subpart P Appendix 1 (20 CFR §§ 416.920(d)"[3] at Step 3.

The dispute focuses on the ALJ's next set of determinations.  By holding that Plaintiff's substance abuse disorder, primarily alcoholism, meets the listing level, the ALJ has found that Mr. McNinch is disabled.[4]  This is a Step 3 determination entitling the Claimant to disability benefits.

> Claimant's substance abuse results in sufficient functional restrictions to meet subsection B (depressive syndrome), as required by Listing 12.04.  With regard to the "B" criteria, this impairment results in marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace.

---

[2]  Opinion at page 5 (Tr. at 18).

[3]  Exhibit 31 (Tr. at 46, 47) does show earned income for several years, the last being 2000.  The job description is as a "packer".  (Tr. at 78, 79).

[4]  The duration factor is not raised.  However the medical Record is replete with notations regarding continuing substance abuse.

4

> As discussed above, claimant has required multiple detoxifications for continued substance abuse.  At the hearing, he testified that he panhandles for money to buy drugs and alcohol.  His continued use has resulted in marked deficiencies in concentration and task persistence and multiple hospitalizations.  He spends most of his day in search of drugs and alcohol. Therefore, his substance abuse disorder is of the listing level.

Decision at 5, Tr. at 18.

This is confirmed in a consulting evaluation by Leonard Miller, Ed.D. (Exhibit 10F, Tr. at 302-306).  The primary diagnosis was "Major Depressive Disorder with psychotic features (provisional)" followed by "Alcohol Dependency" and "Anxiety Disorder NOS" as well as "Paranoid Personality Disorder, Asthma and Ulcer".  The "B" criteria are primarily "marked" with two others deemed "moderate".  In summary..."Mr. McNinch does not have the level of emotional health to be employable."

> In May 2006, he stated that he no longer uses drugs or alcohol and does not hear voices (Exhibit 13F).  However at the hearing, claimant admittedly was, and still may be, panhandling for money.  He said he spent the equivalent of a 40-hours per week doing this (every day, about 6 hours, until he got enough money to spend on his drug and alcohol habits).

Decision at 5, Tr. at 18.

Then, apparently, the ALJ attempts to distinguish the listing level of Plaintiff's impairment(s) into the status of not being totally disabled by using Steps 4 and 5.

He reviews the state agency examiner report (Exhibits 11 and 12F) which finds lesser restrictions on performance and an ability to do simple work tasks.  Commenting on the Claimant's testimony regarding his improved sobriety, the ALJ references his "panhandling for money".[5]

---

[5]  As the Court commented at oral argument, this "panhandling" reference clearly lacks sufficient specificity to be work.  N.T. (October 28, 2008) at pages 12-13, 17-18.  Further,

Using this less restrictive report of agency review as a framework, he moves into an analysis of a 1996 Congressional Amendment which bars the award of disability benefits on the basis of alcoholism or drug addiction[6] being a material factor.

The ALJ develops a residual functional capacity ("RFC") which becomes a finding:

> 6. If he stopped the substance use, claimant would have the following residual functional capacity: moderate limitations in his ability to remember locations and work like procedures, understand and remember detailed instructions, and marked limitations in his ability to carry out detailed instructions, moderate limitations in his ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain attendance and be punctual within customary tolerances, complete a normal work day or work week without interruptions from psychologically based symptoms and perform at a consistent

--------

Claimant's panhandling evidences his continued drug/alcohol use.

[6]    The ALJ purported to rely on the State Agency's assessment that substance abuse was material to Mr. McNinch's impairments. R. 19 (referring to Exhibit 12F). This reliance was misplaced because the State Agency concluded Mr. McNinch is not disabled. R. 309-22 (Exhibit 12F).  Since materiality is considered only subsequent to a finding of disability, the State Agency never properly considered the issue of materiality.  As a result, the ALJ's reliance on the State Agency's finding of materiality was improper. In addition, since the ALJ implicitly rejected the State Agency's assessment by finding Mr. McNinch disabled, it is contradictory for the ALJ to rely on an assessment he has rejected. R. 14.

The Commissioner suggests that the ALJ's reliance on the State Agency's report, despite rejecting its central finding that Mr. McNinch is not disabled, is appropriate.  The Commissioner attempts to narrow the distance between the ALJ's conclusion and the State Agency's.  First, the Commissioner argues that the two opinions are similar because they both found that Mr. McNinch's substance abuse is material to his psychiatric problems.  Second, the Commissioner attempts to minimize the difference between the opinions by stating "[t]he only difference is that the state agency psychologist determined the Plaintiff's...[substance] abuse was 'material to his psych[iatric] symptoms, but that he nonetheless 'is able to meet the basic mental demands of competitive work...whereas the ALJ...determined that the Plaintiff's substance abuse is disabling."  (See Defendant's Response to Request for Review of Plaintiff Statement of the Case at page 5.) Plaintiff's Reply at pages 5-6.

pace without an unreasonable number and length of rest periods, and respond
appropriately to changes in the work setting.  He can perform basic work-related
activities, make simple decisions, carry out very short simple instructions, sustain
and ordinary work routine, and perform repetitive work without constant
supervision.  His physical residual functional capacity would not change.  That is,
he would be limited to lifting 10 pounds frequently and 20 pounds occasionally
and would need to avoid fumes and noxious odors (due to asthma); he would have
no other exertional or environmental limitations (Exhibit 14F).

Tr. at 19.

Initially, the ALJ acknowledges the Claimant's testimony:

...that he last used alcohol and crack 6-7 months ago.  He has not used any other
drugs since then.  He used $50-$100 worth of drugs every 2-3 days.  He used
welfare money and panhandling money (as described above).  He takes
medication to help him sleep but still hears voices although he cannot understand
them.  He allegedly had been suicidal about a month prior to the hearing.  He lives
with a friend; but if he does not take his medications, he starts mumbling and she
gets scared and kicks him out; he goes to his mother and the cycle repeats.  He
performs few household chores except maybe some grocery shopping.  On a
typical day, he watches television and may talk to friends over the phone.  He
remembers to go to appointments. Socially, he gets along with friends, family, and
neighbors.  He can concentrate well enough to watch and understand an 30 minute
news broadcast.  His Zoloft was increased from 50 to 100 mg and it has helped "a
little" with the voices.  Regarding his physical problems, he admitted that despite
having asthma, he smokes cigarettes, as much as he can get (about a pack a day).
Odors of cut grass and chemicals and dust bother him.

Tr. at 20.

* * *

Claimant alleges disability due to depression and back and right arm pain.
However, regarding his depression, records and testimony show that he can care
for himself, get along with others and concentrate to watch the news on TV.  None
of his treating sources has documented severe mental limitations independent of
substance abuse.  Regarding his physical impairments, he has not had much
treatment and there is no evidence of any impairment that would preclude him
from sitting, standing and walking 6 hours in an 8-hour day.  Because of his
history of injury to his arm, he cannot lift more than 20 pounds occasionally and
10 pounds frequently, and thus he is limited to work at the light exertional level.
Perhaps most telling is his ability to spend 6 hours a day panhandling, which

7

involves sitting and standing and interacting with the public.  The panhandling requires that he interact with people, that he make a plan and carry it out it (sic) day to perform this activity, and that he sustain the activity until the amount of money he wants is collected.  These activities suggest that he could perform work on a regular and continues (sic) basis despite his non drug/alcohol related limitations

In reaching the above residual functional capacity, I have considered all evidence relating to how claimant would function if the substance abuse were stopped.  I find that, if claimant were not abusing substances (which he claims he no longer does; this is not corroborated) based on his testimony and the state agency medical opinion, claimant would have the residual functional capacity set forth in Finding No. 6 above (see Exhibits 11F, 12F and 14F).

Tr. at 21.

The ALJ construes the agency examiner's report as evidence to satisfy the requirement that once alcoholism is held to be a contributing factor material to the disability determination, benefits are barred unless the individual could not work absent the substance abuse.[7]

The ALJ then holds that the Claimant is employable, based on the VE's testimony.

If he stopped the substance abuse, claimant's ability to perform work at the light exertional levels would be compromised by nonexertional limitations.  To determine the extent to which these limitations erode the occupational base of unskilled work at the light exertional levels, I asked the vocational expert whether jobs exist in the national economy for an individual with his age, education, work experience, and residual functional capacity.  The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as a product inspector (1,600 jobs locally and 100,000 jobs nationally) and cashier/ticket seller (13,000 jobs locally and 700,000 jobs nationally).

* * *

I credit the vocational expert's testimony and within the framework of Rule 202.17, I conclude that, if he stopped the substance abuse, claimant would be capable of making a successful adjustment to work that exists in significant

---

[7]  See Mirabile v. Commissioner of Social Security, 2008 WL 5381226 (DNJ); Thomas v. Astrue, 2008 WL 4589751 (ED of PA).

numbers in the national economy.  A finding of "not disabled" is therefore appropriate.

Tr. at 22.

The ALJ's Opinion is replete with errors.  At Step 3, the Claimant is eligible for benefits based on his impairments meeting Listings 12.09 through 12.04.  A consultative exam report is referenced.

Then, without factual support, the ALJ determines that, absent substance abuse, the remaining impairments are severe but not at listing level.[8]

There is no evidence that the substance abuse is a material contributing factor.[9]

There is substantial evidence in the Record that the Claimant has depression, a right arm injury and asthma, as well as substance abuse. Additionally, the ALJ has acknowledged his limited education, age, lack of work skills and exertional limitations.

However, without substantial evidence that the substance abuse is a material contributing factor, and that without the abuse the Claimant has the capacity to work and sustain employment, the Decision is incomplete and requires a remand, as the administrative record has not been fully developed. See Hoff v. Astrue, 2009 WL 222764 (E.D. Pa.)

_____

[8]  Knox v. Barnhardt, 60 Fed.Appx. 374, 376 (3rd Cir. 2003).

[9]  Most troubling are the references to panhandling.  Clearly, this activity, by the Claimant's admissions, is used to support his substance abuse.  Since the ALJ finds that the Claimant is panhandling up to the time of the hearing, there is no support for his residual functional capacity ("RFC") findings, absent abuse.  Even more improper are the inferences that this activity is work-like in regularity, level of communication and exertional level, even with his other impairments.

## RECOMMENDATION

It is recommended that Judgment is entered in favor of the plaintiff, reversing the decision of the Commissioner of Social Security for the purposes of this remand only and the relief sought by plaintiff is granted to the extent that the matter is remanded, pursuant to sentence four of 42 U.S.C. § 405(g),  for further proceedings consistent with this adjudication.

Claimant may file objections to this Report and Recommendation.  See Local Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.


 S/M. FAITH ANGELL
M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE